Mr. Justice Robb
delivered the opinion of the Court:
.These are appeals in an interference proceeding in which priority of invention as-to six of the claims here involved was awarded William Robinson, the senior party, and priority as to the other six claims was awarded James S. Copeland. Harry Pond Townsend and Copeland both appealed from the decision in favor of Robinson, and Townsend alone from the decision in favor of Copeland.
The invention is a coaster brake for bicycles, and by its mechanism the wheel is driven by forward pedaling, permitted to coast when the pedals are stationary, and its motion retarded by back pedaling; in other words, forward pedaling drives the wheel, holding the pedals stationary permits coasting, and back pedaling brings the brake into action. The following counts are representative of the twelve:
“1. In a hub brake, a coasting wheel hub provided on its interior with a braking surface, a stationary anchoring plate supported at one point by the wheel axle and arranged for connection with the frame of the vehicle at a distance from said axle, a movable braking element held in nonrotatable position by said anchoring plate, driving means, and means actuated by reversing said driving means, for forcing said movable braking element outwardly against said braking surface of the hub by pressure exerted upon said movable braking element in the direction of the forward rotation of said hub.”
“5. A coasting brake mechanism comprising a stationary supporting shaft, a wheel hub rotatable thereon, and having a braking surface, a stationary brake member supported by said shaft, and engaging the frame of the vehicle at a distance therefrom, a movable brake member secured in nonrotatable position by said stationary member, driving means, means for connecting said hub and said driving means on forward pedaling and releasing the same for coasting, and means for forcing said movable brake member into braking contact with said braking surface of the hub on the reverse movement of said driving means.”
*328 “7. In a hub brake mechanism, the combination with a wheel hub provided with a braking surface, of a nonrotatable fixture supported by the stationary wheel axle at one point, and provided with an extension for engaging the vehicle frame at a distance from said axle, a spring released braking element connected nonrotatable to said fixture, but having limited movement relatively thereto, driving means, and means actuated by said driving means, on back pedaling, for bringing said movable braking element into frictional braking contact with said braking surface of the hub.”
“10. The combination of a stationary supporting shaft, a driving and coasting wheel hub rotatable supported thereon and provided with a driver, and on its interior with a braking surface, means for automatically clutching together said driver and hub for driving and releasing the same for coasting, a driving or crank shaft, a stationary fixture supported at one point by said supporting shaft, and having an extension engaging the vehicle frame at a distance from said supporting shaft, a nonrotatable movable braking element held in position by said stationary fixture, said braking element co-operating with said braking surface to apply a brake thereto, and means for actuating said brake by the reverse movement of said driving or crank shaft.”
Each of the three tribunals of the Patent Office awarded priority to Robinson as to counts 1, 2, 5, 6, 11, and 12. It was stated at Bar by counsel for Copeland and Townsend, who represent the assignee of these parties, that Townsend, as between Copeland and Townsend, is entitled to priority as to the counts awarded Robinson. We will first consider, therefore, the evidence upon which Townsend seeks a reversal of the award to Robinson.
Robinson’s application was filed October 8, 1897. This application we have no hesitancy in declaring a constructive reduction to practice of the invention therein disclosed. Townsend filed October 10, 1898, one year later than Robinson. It appears that there was a prior interference between the three parties to this interference. The exact relation between that *329 interference and the present does not fully appear. It does appear, however, that the same applications of Townsend and Copeland were there involved, and that certain testimony and all the important exhibits upon which Townsend here relies were there considered. The decision by the Examiner of Interferences in the prior interference was in favor of Eobinson, and no appeal was taken therefrom. In the present interference it appears that Townsend, in February, 1897, designed, and soon thereafter constructed, a coasting and braking device, an exhibit of which is in evidence. His counsel now contends that this device meets the terms of certain counts of the issue. We agree with the Patent Office tribunals that it “requires a stretch of the ordinary meaning of the term ‘shaft’ to apply it to the crank hanger” of this early device, and that “it requires likewise a stretch of the language ‘a coasting wheel hub revolubly supported thereon’ to apply it to the cone in connection with the said crank hanger.” As stated by the Examiner of Interferences, “the devices disclosed in the applications involved in this interference are attached to the rear wheel hubs of bicycles, and the aforesaid claims are applicable to them in the ordinary sense of the terms therein used. There is, then,, no necessity for departing from the ordinary meaning of these terms.” Without more, therefore, we rule that this early device in no way anticipated the invention here in issue.
Townsend testified that he conceived the invention in issue, and disclosed it “in a general way” to a Mr. Eockwell, general manager of the company in whose employ Townsend then was, and to certain other people early in September, 1897. The testimony of Mr. Eockwell in the prior interference, which, by stipulation, is made a part of this, is insufficient, owing to its vagueness, to prove a disclosure of this particular invention by Townsend. In that testimony, which was given more than four years after the alleged disclosure, Mr. Eockwell stated that at the time the disclosure was made, a drawing embodying the invention was then shown him; that this drawing was placed in a safe, and that search for it, after the declaration of the interference, was unavailing. After the case was closed, a *330 drawing, dated September 10, 1897, signed by Townsend, and purporting to be the drawing shown Rockwell, was produced, and the case reopened for the purpose of admitting it in evidence. Mr. Rockwell testified that he last saw this drawing between October, 1898, and April, 1900, and that it was discovered while removing and sorting rubbish in the office of the company on June 20, 1903. Mr. Rockwell admitted that other persons had access to the drawing prior to its disappearance, and his identification of it, which, it will be observed, occurred several years after its disappearance, was not- of a very convincing character. The drawing shown Rockwell, according to his testimony, was a mere hand sketch, while the drawing produced is in ink, drawn to scale, and practically complete in its details. A witness, Neal, testifying in the former interference, first stated that Townsend showed him no drawings of his invention other than some pencil sketches, which he made by way of explanation. After the production of this drawing of September 10, 1897, this same witness testified that Townsend first disclosed the invention to him by means of this very drawing. Moreover, as carefully pointed out by the tribunals of the Patent Office, “an examination of Exhibit Models B and O in connection with the exhibit drawing and with the testimony relative to these exhibits leads to the conclusion that Townsend exhibit drawing is in fact a later drawing, showing a more compact and neater construction than that embodied in Exhibit B; that it is the drawing from which-Exhibit O was made, and has no better date than the latter part of February, 1898. Exhibit C, at least as to general dimensions, appears to correspond exactly with' the exhibit drawing, which is a drawing to scale.” Mr. Rockwell was probably sincere in his belief that this drawing was the one shown him in 1897. The circumstances and the testimony concerning the drawing, however, are such as to discredit it.
The only other evidence which it is necessary to consider is the testimony of one Goodwin, a chemist, whose memory seems to have improved with the passage of time. Testifying in the early interference, that is to say, about four years after *331 the alleged disclosure to him, he then admitted that he did not understand the mechanical structure. and manner of operation of the device which Townsend disclosed to him early in -September, 1897; in other words, from his testimony in that interference it was apparent that the most he understood was the result Townsend sought to accomplish. In his testimony in the present interference, eleven years after the event about which he'was testifying, his memory was much better, and he described quite accurately the essential features of the invention which, he testified, was disclosed to him by Townsend eleven years before. All this testimony has been carefully, and we think accurately, reviewed by the Patent Office. We do not deem it necessary to examine it further. Suffice it to say that, in our view of the testimony, Townsend has failed to prove conception of this invention prior to Robinson’s filing date.
It is contended in behalf of Townsend that the award to Copeland should be reversed in his favor on the ground, first, that Townsend is entitled to make the claims awarded Copeland, and, second, that he is the prior inventor of these claims. It is unnecessary to consider the first question for the simple reason that even conceding, arguendo, Townsend’s disclosure furnished a sufficient basis for the claims awarded Copeland, there is no testimony in behalf of Townsend, as we read the record, which proves conception of the invention embodied in those counts prior to December 23, 1897, the date to which Copeland is entitled.
The decision of the Commissioner is affirmed, and the.clerk will certify this opinion according to law. Affirmed.